**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO**

**CIVIL ACTION NO. 4:05-CV-184**

| | |
|---|---|
| **ROBERT P. MOORE and** | |
| **JUDITH K. MOORE,** | **PLAINTIFFS** |
| **V.** | |
| **IRVING MATERIALS INC.,** | |
| **PEYRONNIN CONSTRUCTION CO., and** | |
| **FIDELITY AND DEPOSIT COMPANY** | |
| **OF MARYLAND,** | **DEFENDANTS** |
| **V.** | |
| **IRVING MATERIALS, INC.,** | **THIRD- PARTY PLAINTIFF** |
| **V.** | |
| **HANSON PLC, HBMA HOLDINGS, INC.,** | |
| **HANSON AGGREGATES EAST, INC., and** | |
| **HANSON AGGREGATES MIDWEST, INC.,** | **THIRD-PARTY DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion (DN 79) by Third-Party Defendants, Hanson PLC, HBMA Holdings, Inc. ("HBMA"), and Hanson Aggregates East, Inc. ("Hanson East"), to dismiss the Amended Third-Party Complaint (DN 59) of Irving Materials, Inc., and IMI South, LLC (collectively, "IMI"). These Third-Party Defendants argue that the Amended Third-Party Complaint should be dismissed because 1) IMI has not plead sufficient facts to demonstrate the existence of personal jurisdiction over any of them; and 2) as to Hanson PLC, because IMI failed to serve this London-based corporation with process via a method authorized by the Hague Convention. Fully briefed, this matter is ripe for decision. For the foregoing reasons, the motion is **GRANTED** in part and **DENIED** in part.

## I. FACTS

Third-Party Plaintiff IMI is a ready-mix concrete producer that supplies concrete for residential and building projects, such as foundations, footers, driveways, sidewalks, parking lots, and patios, in and around Madisonville, Kentucky. Third-Party Defendant Hanson Midwest is a limestone coarse aggregate supplier; it owns and operates quarries from which it mines stone, or "aggregate," of varying sizes and types, to sell to customers who use the aggregate for a variety of purposes. From September 1997 to March 2000, IMI purchased limestone aggregate from Hanson Midwest (mined from Hanson Midwest's Princeton Quarry) to use in concrete mixes. In 2000, some of IMI's concrete began showing signs of distress. To date, over 529 different concrete projects are undergoing deterioration or distress around Madisonville. IMI has filed this cause of action against Hanson Midwest for breach of contract, negligence, and fraud. IMI has included the Moving Parties, Hanson PLC, HBMA, and Hanson East, in this action, alleging that they "controlled or acted as the alter ego of Hanson Midwest" during the relevant time period. (DN 59, Amended Third-Party Complaint, ¶¶ 10, 13).

According to IMI, Hanson PLC is a public limited company headquartered in London, England, and is the ultimate parent of Hanson's North American operations. It is the one hundred percent (100%) owner of HBMA, Hanson East, and Hanson Midwest. HBMA operates all of Hanson's North America operations and is the "beneficiary" of Hanson Midwest's operations. HBMA manages the liabilities associated with the Princeton Quarry, and its employees are the decision-makers regarding matters associated with this litigation. Hanson East is a holding company, interposed between HBMA and Hanson Midwest. HBMA and Hanson East are Delaware corporations and their principal places of business are located in Irving, Texas.

Under the current corporate organizational structure, Hanson Midwest's receivables are paid into a "lockbox bank account that is swept daily through Hanson's larger cash-management system. That goes into Hanson PLC's funds...." (Hyer Dep., p. 41). Further, Hanson Midwest must seek Hanson's approval prior to buying or selling assets or making any significant corporate expenditures and Hanson Midwest's "back-office functions," such as accounting and human resources, are handled by a Hanson entity higher up the chain. (Nye Dep., p. 182, 239).

One individual - James K. Kitzmiller - is the president of HBMA, Hanson East, and Hanson Midwest. He is also one of only two board members of Hanson Midwest. Another individual - Michael Hyer - is the vice-president and secretary of HBMA, Hanson East, and Hanson Midwest. Mr. Hyer is the other board member of Hanson Midwest. The officers of Hanson Midwest do not have annual meetings; rather, they alter company policy via written consent resolutions. The resolutions are prepared by HBMA staff and maintained by an HBMA employee in Irving, Texas. Mr. Kitzmiller, the President of Hanson Midwest, does not participate in the drafting of corporate resolutions and does not know where the corporate minutes are maintained. Further, Mr. Hyer, the other corporate officer of Hanson Midwest, will not sign corporate resolutions on behalf of Hanson Midwest unless he knows the parent Hanson companies approve. (Hyer Dep., p. 68).

## II. LEGAL STANDARD

When a district court rules on a jurisdictional motion to dismiss, without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction and the court should not weigh the controverting assertions of the party seeking dismissal. Dean v. Motel 6 Operating, 134 F.3d 1269, 1272 (6th Cir. 1998).

### III. ANALYSIS

#### A. Personal Jurisdiction

In a diversity case, a federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the state in which it sits. Third National Bank in Nashville v. WEDGE Group Inc., 882 F.2d. 1087, 1089 (6th Cir. 1989). Kentucky's long-arm statute, K.R.S. 454.210, has been understood to reach the limit permitted by the Constitution. Wilson v. Case, 85 S.W.3d 589, 592 (Ky. 2002). Thus, the single question is whether the jurisdiction sought is within the requirements of due process.

The Supreme Court has repeatedly held that if a defendant is not present in the forum state, in order to subject him to an in personam judgment, he must have "certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). In Southern Machine Co. v. Mohasco, the Sixth Circuit set forth a three-part test for determining whether, consistent with due process, personal jurisdiction may be exercised over a defendant. 401 F.2d. 374 (6th Cir. 1968). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable." Id. at 381; see also WEDGE.

Analyzing the present case under the three Southern Machine criteria, the Court concludes that specific jurisdiction exists over Hanson PLC, HBMA, and Hanson East.

**1. Purposeful Availment**

The first <u>Southern Machine</u> criterion requires that the defendant must have "purposefully avail[ed] itself of the privilege of acting in the forum state or causing a consequence in the forum state." <u>Id</u>. Importantly, "a company does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction." <u>Motel 6</u>, 134 F.3d at 1274 (citing <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 781 n.13 (1984). For a court to find purposeful availment, the Plaintiff must show that the parent company is being brought into court for something it has done, not just for something that its subsidiary had done. <u>Id</u>. Thus, when considering whether a parent company has purposefully availed itself of the privilege of acting in a forum state, the court must find some overt action connecting the parent company with the forum state. <u>Id</u>. A court may find an overt action where there is direct evidence that a parent company "actually controls" the subsidiary. <u>Id</u>.

In <u>Motel 6</u>, for example, the court held that the plaintiff failed to show that the defendant parent corporation, which had a controlling interest in the defendant subsidiary located in Kentucky, purposely availed itself of the privilege of conducting activities in Kentucky since the plaintiff failed to "provide any direct evidence of [the parent company]'s involvement in the operation of the [subsidiary]." <u>Id</u>. Other than ownership, the plaintiff pointed only to vague financial statements which indicated that the parent company may have provided management and financial services to the subsidiary and to the fact that some individuals in management positions at the subsidiary formerly worked for the corporation. <u>Id</u> at 1275. Importantly, however, the court indicated that direct evidence of 1) extensive management, consulting, and financial services provided to the subsidiary by the parent; and 2) "a network of simultaneous board memberships" supports a finding

5

that the parent controls the subsidiary. Id.

Similarly, in Third National Bank v. WEDGE Group, Inc., the Sixth Circuit held that even though the parent corporation had never directly conducted business, held title to property, or retained employees in the forum state, the parent corporation had purposely availed itself of acting and causing consequences in the forum state, where 1) it was the 100% owner of the subsidiary located in the forum state; 2) its officers served as directors of the subsidiary; 3) it participated in a tax-sharing agreement with the subsidiary; 4) it participated in negotiations on behalf of the subsidiary; and 5) it deposited funds in the subsidiary's account to induce the plaintiff to make a loan to the subsidiary. 882 F.2d. 1087, 1090.

Accordingly, here, construing the evidence in the light most favorable to the plaintiff, the Court holds that the moving parties, including Hanson PLC, HBMA, and Hanson East, through their control of Hanson Midwest, purposely availed themselves of the privilege of acting in Kentucky, the forum state. The evidence presented by the Plaintiff establishes that 1) the moving parties are the 100% owners of the subsidiary; 2) the officers of the moving parties are the officers of the subsidiary; 3) the moving parties manage the financial and human resource departments of the subsidiary; and 4) the officers of the subsidiary only take action in accordance with the desires of the moving parties. Following both WEDGE and Motel 6, the Court concludes that these actions and contacts establish the necessary control of the subsidiary required to show purposeful availment on behalf the moving parties.

**2. Arising from Defendants' Activities**

The second Southern Machine requirement is that "the cause of action must arise from the defendant's activities" in Kentucky. Put another way, the cause of action must "have a substantial

connection with the defendant's in-state activities." 401 F.2d. at 384. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Id.

The Court concludes that this requirement is met since the cause of action involves claims for breach of contract, fraud, and negligence against Hanson Midwest, the subsidiary that the moving parties effectively control.

### 3. Fairness

The final Southern Machine requirement is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Id. Where the first two elements are met, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." First National Bank v. J.W. Brewer Tire Co., 680 F.2d. 1123, 1126 (6th Cir. 1982).

Here, the Court can find no circumstance that would render the exercise of personal jurisdiction over the moving parties unreasonable. Kentucky has a strong interest in resolving this case, in which it is alleged that defective aggregate has caused homeowners and public entities alike.. damages totaling several million dollars.

For these reasons, the Court concludes that the Third-Party Plaintiff has made a prima facie showing of specific personal jurisdiction and the moving parties' motion to dismiss the Third-Party Amended Complaint as to them is **DENIED**.

### B. Service of Process under the Hague Convention

Alternatively, the moving parties argue that the Third-Party Amended Complaint should be dismissed as to Hanson PLC because the method of service of process by IMI as to Hanson PLC was

insufficient. IMI attempted to serve Hanson PLC through the Office of the Secretary of State of the Commonwealth of Kentucky, which sent copies of the civil summonses and the Amended Third-Party Complaint by registered mail to Hanson PLC's offices in London, England.

Federal Rule of Civil Procedure 4(h) provides that "service upon a...foreign corporation...from which a waiver of service has not been obtained and filed, shall be effected...in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f)..." Subdivision (f) states that "service...may effected in a place not within any judicial district of the United States...by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1).

The Hague Convention is a multinational treaty "whose purpose was to formulate an 'appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time,' and seeking to 'improve the organization of mutual judicial assistance for the purpose of simplifying and expediting the procedure.'" Uppendahl v. American Honda Motor Co., 291 F.Supp. 2d 531, 532 (W.D.Ky. 2003) (quoting Hague Convention Preamble, November 15, 1965, 20 U.S.T. 361, 362). Article 10 of the Hague Convention states, in part: "Provided the State of destination does not object, the present Convention shall not interfere with–(a) the freedom to send judicial documents, by postal channels, directly to persons abroad..." While the Sixth Circuit has not considered the issue, other circuits are divided as to whether this section of the Hague Convention permits service on a foreign defendant by direct mail. See, e.g., Brockemeyer v. May, 383 F.3d. 798, 802 (9th Cir. 2004) (because the term "send" includes the meaning "serve," service of process by direct mail is proper under this section);

Ackerman v. Levine, 788 F.2d 830, 838 (2nd Cir. 1986); but see Bankston v. Toyota Motor Corp., 889 F.2d. 172, 173-174 (8th Cir. 1989) (this section authorizes the sending of judicial documents by mail, but only after service of process is accomplished by some other means); Nuovo Pignone v. Storman Asia M/V, 310 F.3d. 374 (5th Cir. 2002). Additionally, another court in the Western District of Kentucky has taken the position of the Eighth and Fifth Circuits and held that the Hague Convention does not permit international service of process by direct mail. Uppendahl v. American Honda Motor Co., 291 F.Supp.2d 531 (W.D. Ky. 2003).

The Court finds the reasoning of the second line of authority to be more persuasive and holds that the word "send" in Article 10(a) is not equivalent to "service of process." As the Eighth Circuit noted, it is a "familiar canon of statutory instruction that the starting point for interpreting a statute is the language of the statute itself." Bankston, 889 F.2d at 174 (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)). Additionally, where a legislative body "includes particular language in one section of a statute but omits it in another section...it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion." Id. (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). Here, because the word "service" is specifically used in other section of the Convention, it seems that if the drafters had meant for 10(a) to provide an additional manner for service of judicial documents, they would have used the word "service." Accordingly, the Court holds that sending a copy of a summons and complaint by registered mail to a defendant in a foreign country is not a method of service permitted by the Hague Convention.

Therefore, service is quashed and IMI has leave to effect service within 90 days upon Hanson PLC.

See, e.g., Stern v. Beer, 200 F.2d 794, 795 (6th Cir. 1952)(if first service of process is ineffective, the court should treat the motion to dismiss as one to quash the service of process and "the case should be retained on the docket pending effective service").

## IV. CONCLUSION

For the forgoing reason, the Third-Party Defendants' motion to dismiss the Third-Party Amended Complaint is **GRANTED** in part and **DENIED** in part**. IT IS SO ORDERED**.

cc: Counsel of Record